# IN THE COURT OF APPEALS OF IOWA

No. 23-0317
Filed May 24, 2023

**IN THE INTEREST OF J.R. and L.R.,**
**Minor Children,**

**N.R., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Elizabeth M. Wayne of Papenheim Law Office, Parkersburg, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Mark A. Milder of Mark Milder Law Firm, Denver, attorney and guardian ad litem for minor children.

Considered by Chicchelly, P.J., Buller, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**GAMBLE, Senior Judge.**

A mother appeals the termination of her parental rights to two of her children, J.R. and L.R.[1] She challenges the statutory grounds for termination and whether termination is in the children's best interests. We affirm.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We consider: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

First, we consider the mother's challenge to the statutory grounds authorizing termination. Here, the juvenile court terminated the mother's rights to L.R. under Iowa Code section 232.116(1)(h) and (g) (2022). With respect to J.R., the court terminated the mother's rights under section 232.116(1)(a), (f), and (g).

---

[1] The court did not terminate the parental rights of J.R.'s father, and the permanency goal with respect to J.R. is to return to his father's care. The court terminated the parental rights of L.R.'s legal father and biological father. Neither one appeals.

When the juvenile court terminates under multiple statutory grounds, as occurred here, we may affirm on any ground satisfied. *In re J.D.*, No. 21-0391, 2021 WL 3379037, at *1 (Iowa Ct. App. Aug. 4, 2021). We elect to address paragraph (h) as to L.R. and paragraph (f) as to J.R. These paragraphs differ slightly. Paragraph (f) authorizes termination of a parent's parental rights when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). Paragraph (h) is nearly identical except it applies to a child who is "three years of age or younger" and only requires the child be removed "for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days." *Id.* § 232.116(1)(h). The mother only challenges the fourth element under both paragraphs—whether the children could be safely returned to her custody at the time of the termination hearing. *See In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (finding section 232.116(1)(h)(4) is satisfied if the evidence shows "[t]he child could not be safely returned at the time of the termination hearing"). We agree with the juvenile court that the children could not be safely returned to the mother at the time of termination hearing.[2]

---

[2] The juvenile court conducted the termination hearing on February 9, 2023.

This family came to the attention of the Iowa Department of Health and Human Services in May 2021 due to domestic violence between the mother and J.R.'s father; the poor condition of the home; and the discovery of J.R., then age three, alone and playing in the street. Since the department became involved with the family, the mother has moved several times including stays in Ottumwa, Newton, Des Moines, another in Newton, another in Des Moines, again in Newton, and ending in Des Moines.

The mother engaged in a relationship with L.R.'s biological father even though he was criminally charged with domestic abuse assault by strangulation for an act of violence perpetrated against her. The mother also permitted L.R.'s biological father to have contact with her despite a court order prohibiting contact between father and child. The mother gave birth to a third child, whom she shares with L.R.'s biological father, during the pendency of these proceedings.[3] Both the mother and L.R.'s biological father moved to Des Moines together.[4]

At times the mother had difficulty caring for all three of her children during visits and asked providers for help or would end the visits early. However, eventually the children returned to the mother's home for an informal trial return period, but the mother struggled to maintain the home after just two weeks. The department then received reports that L.R.'s biological father was living at the home and transporting the children. A social worker checked in on the mother's

---

[3] The mother's youngest child is not a party to this case.

[4] The mother denies that they moved together. But, like the juvenile court, we do not find her denial credible given the fact that the biological father's mother paid for their moving truck, they moved to the same town at the same time, and the biological father refuses to disclose where he lives.

apartment in Newton unannounced in September 2022 and found the home in "an unsanitary condition." Photos show the home was covered in trash including on the furniture, floor, kitchen counters, and stove top. The trash included discarded food, dirty diapers, newspapers, and cigarettes among other things. Since that time, the mother has only had supervised visits with the children.

In November of 2022, the mother moved from Newton to a two-bedroom apartment in Des Moines. The social worker visited the apartment in December. At that time there were no cleanliness or safety concerns. However, the social worker was unable to schedule return visits because the mother claimed she was sick. Given her track record in her Newton apartment, we have concerns about the mother's ability to maintain a clean and safe environment for the children on an extended basis. And although the mother is employed and receives public assistance, the unsubsidized rent for the Des Moines apartment is $770.00 per month plus utilities. Given the number of times she has moved in the past, we question her ability to sustain this housing for an extended period.

From this record, we believe the mother has not adequately addressed the safety concerns that led to the department's involvement. This is evidenced by the fact that her home was covered in trash, creating an unsafe and unsanitary environment for young children, shortly after resuming temporary care of the children. Given the extent of the mess, we find the mother's explanation that the home was only dirty because she and the children had been sick the prior days to be unpersuasive. The degree of uncleanliness reflected in the photos would result from a sustained period of neglect, not the length of a short illness. And the mother's inability to maintain a safe home has been an ongoing concern with her.

The mother reported her rights to other children were previously terminated in Minnesota, North Dakota, and Wyoming based in part on the condition of her home. Given her track record and the fact that her home became so dirty so quickly after she temporarily resumed care of the children, we believe the children could not be returned to the mother. *See In re I.N.*, No. 22-0151, 2022 WL 952782, at *2 (Iowa Ct. App. Mar. 30, 2022) (considering the fact that the mother's home was "frequently unsanitary and in disarray" when determining her children could not be returned to her).

We are also concerned about the mother's pattern of involvement with men that results in instances of domestic violence. The mother's suspected continued involvement with L.R.'s biological father is concerning. More concerning are the reports that she has permitted contact between the children and her domestic abuser. This suggests the mother does not appreciate the potential danger he presents to her children. *See J.D.*, 2021 WL 3379037, at *1 (recognizing exposure to domestic violence is harmful to children).

And we have concerns about the mother's general stability. The mother testified that she has been diagnosed as bipolar since she was thirteen years old but is not taking any medication to treat her condition and does not have a local mental-health provider. And while we credit the mother for a period of housing stability while she lived in Newton, overall she has had difficulty maintaining housing as she bounced from location to location. *See In re M.O.*, No. 21-1510, 2022 WL 610442, at *2 (Iowa Ct. App. Mar. 2, 2022) (considering a parent's lack of stable housing when determining the child could not be returned to the parent).

And while the mother has completed Safe Care and participated in family centered services, she has not progressed beyond supervised visitation.

Based on the aggregate of all of these concerns, we conclude the mother cannot provide the children with a threshold level of safety and stability necessary to be able to safely care for them.[5] So we agree with the juvenile court that the children could not be safely returned to the mother, and a statutory ground for termination is satisfied.

Next, we consider whether termination is in the children's best interests. *See* Iowa Code § 232.116(2). We "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

We consider each child separately because their circumstances differ. With respect to L.R., the mother suggests termination is not in L.R.'s best interest because her sibling remains in the mother's care. *Cf. In re A.M.S.*, 419 N.W.2d 723, 734 (Iowa 1988) (noting siblings should be raised together when possible).

---

[5] We understand the mother's youngest child is still in her care and there are no child-in-need-of-assistance proceedings related to that child. But that does not change our analysis with respect to these children. The social worker testified the mother seems to function okay parenting one child but struggles to parent more than one child at a time.

But that is not the determinative factor in this case. *Cf. id.* (recognizing other factors can outweigh the interest in keeping siblings together). L.R. does not treat the mother as her parent and instead calls her placement, her paternal aunt, "mom." Placement has a demonstrated history of placing L.R.'s safety first unlike the mother.[6] And she is willing to adopt L.R. Termination and adoption would provide L.R. the level of safety and stability she deserves.

With respect to J.R., the mother argues since the permanency goal for him remains reunification with his father, custody and visitation could be addressed through a bridge order to the district court and a dissolution decree. However, we share the juvenile court's concern that reunification with the father "seems shakier with each passing hearing."[7] And termination of the father's rights remains a real possibility. So a bridge order is not the best option to address J.R.'s needs long term. Still, we hope the father is able to make progress and achieve reunification. Should the father fail to reunify with J.R., there is no concurrent placement plan for J.R. The mother cites this lack of concurrent placement plan as another reason why termination is not in J.R.'s best interest. While we agree it would be better if the department had a concurrent placement plan for J.R., we still think termination of the mother's rights better serves J.R.'s best interests than not given her inability to make sustained progress and repeated regression making reunification "not an option now or in the near future." J.R. should not be strung along by the mother,

---

[6] For example, when placement discovered the mother permitted contact between L.R. and her biological father in spite of a court directive prohibiting the contact, the mother unsuccessfully tried to persuade placement to lie for her.

[7] For example, the mother testified J.R.'s father told her he recently had nineteen shots or drinks.

doing so would be a disservice to him.  *Cf. In re B.M.*, No. 22-00493, 2022 WL 1488546, at *2 (Iowa Ct. App. May 11, 2022) (recognizing a "child is not equipped with a pause button").  So we agree termination is also in J.R.'s best interest.

Because the mother does not argue a permissive exception should apply, we end our analysis here and affirm the juvenile court.  *See J.D.*, 2021 WL 3379037, at *2.

**AFFIRMED.**